Daniel M. Hattis (SBN 232141)
Email: dan@hattislaw.com
Paul Karl Lukacs (SBN 197007)
Email: pkl@hattislaw.com
HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171

*Attorneys for Plaintiff*
*and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIKA MICKEY,<br>for herself,<br>as a private attorney general,<br>and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEEL, INC.,<br><br>Defendant. | Case No. 3:26-cv-01336<br><br>**<u>CLASS ACTION</u>**<br><br>**COMPLAINT FOR VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200 *et seq.***<br><br>JURY TRIAL DEMANDED |



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Plaintiff Malika Mickey ("Ms. Mickey" or "Plaintiff"), individually, as a private attorney general, and on behalf of all others similarly situated, alleges as follows, on personal knowledge and the investigation of her counsel, against Defendant Seel, Inc. ("Seel" or "Defendant"):

## I. INTRODUCTION AND SUMMARY

1. Seel is an "AI-powered insurance company" founded in 2019, and first started offering insurance products in 2021.[1] Seel is funded primarily by venture capital and finances its growth and operations from such funds.

2. For years, Seel has engaged in a massive and consistent unlawful shipping insurance scheme as an unadmitted insurer. Seel partners with more than 2,000 global ecommerce retailers to provide its shipping insurance.[2]

3. When consumers go through the online checkout process on a partner retailer's website, they are presented with the option to purchase Seel's shipping insurance (which is labeled as "Worry-Free Delivery") for an additional fee, purportedly to ensure that they can recover the cost of the item in the event that their purchase is lost, damaged, or stolen.

4. Seel's "Worry-Free Delivery" service meets the definition of "insurance" under California law and is subject to the California Insurance Code. Seel's "Worry-Free Delivery" shipping insurance product is hereinafter referred to as "shipping insurance."

5. Seel's unlawful provision of shipping insurance violates California's Unfair Competition Law (UCL), California Business & Professions Code § 17200 *et seq.*, in numerous ways, as detailed in this Complaint.

6. Unadmitted insurers such as Seel are not "subject to contributions [to state guaranty associations], nor would they be readily susceptible to other California regulatory controls which promote fiscal responsibility." *Nowlon v. Koram Ins. Ctr., Inc.*, 1 Cal. App. 4th 1437, 1445 (1991).

---

[1] *See* "Exclusive: Seel Raises $17M Series A to Unlock 'High-Frequency, Low-Premium' Insurance with AI," Seel, at https://www.seel.com/news/seel-raises-17m-series-a.

[2] *See* "GoodwillFinds Expands Partnership With Seel to Offer an Integrated Worry-Free Shopping Experience," Seel, at https://www.seel.com/news/goodwillfinds.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

7. Violations of the California Insurance Code affect important public policies in California. *See People v. United Nat. Life Ins. Co.*, 427 P.2d 199, 210 (1967) ("It is settled that 'the business of insurance is affected with a public interest.'") (internal citations omitted).

8. Seel is not an admitted insurer in the state of California, as is required under the California Insurance Code. The unlawful shipping insurance purchased by Plaintiff and Class members was not worth the price they paid. If Plaintiff and Class members had been aware that Seel's shipping insurance was unlicensed and unlawful, they would not have purchased it at all.

9. Plaintiff brings this lawsuit individually and on behalf of a nationwide class of consumers who purchased Seel's shipping insurance. Plaintiff seeks recovery of all money paid to Seel for the shipping insurance. Additionally, Plaintiff, acting as a private attorney general, seeks public injunctive relief to protect the general public by enjoining Seel from engaging in its unauthorized shipping insurance scheme as alleged herein.

## II. THE PARTIES

10. Plaintiff Malika Mickey is a citizen and resident of the city of Midlothian, in Chesterfield County, Virginia, and is an unsophisticated consumer party.

11. Defendant Seel, Inc. is a Delaware corporation with its principal place of business at 566 Brannan Street, San Francisco, California 94107. Seel is registered to do business in California and provides unauthorized and illegal shipping insurance to consumers nationwide. When a consumer purchases Seel shipping insurance while completing his or her order on a partner retailer's website, the retailer collects the money and is later billed by Seel from California for the revenue from shipping insurance fees. If a consumer needs to file a claim, Seel evaluates and pays on the claim from its California headquarters. Seel also makes decisions on and sets the shipping insurance rates from its California headquarters.

## III. JURISDICTION AND VENUE

12. **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from Seel.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

13. **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because, without limitation: (1) Defendant is authorized to do business and regularly conducts business in California; (2) the claims alleged herein took place in California; and/or (3) Defendant has committed tortious acts within California or has committed tortious acts outside California which had an impact within California (as alleged, without limitation, throughout this Complaint). Defendant has sufficient minimum contacts with California to render the exercise of jurisdiction by this Court permissible.

14. **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because Defendant is a California citizen who resides in this District (specifically, in San Francisco County).

## IV. SEEL'S UNLAWFUL SHIPPING INSURANCE SCHEME

15. Seel provides shipping insurance to consumers nationwide primarily through the websites of its partner retailers.

16. Seel is an unadmitted insurer in violation of the California Insurance Code. The unlawful shipping insurance purchased by Plaintiff and Class members was not worth what they paid. If Plaintiff and Class members had been aware that Seel's shipping insurance was unlawful, they wouldn't have purchased it at all.

17. On its website, Seel describes its insurance products as "Worry-Free Purchase®" and "Shipping Protection." Both insurance products cover loss and damage. See the below screenshots of the FAQ pages from Seel's website regarding Seel's "Worry-Free Purchase®" and "Shipping Protection" products.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**Seel FAQ Webpage For "Worry-Free Purchase®"**



Delay

$5 USD compensation for delay

Loss

Cover the Actual Item(s) Value Paid

Damage

Cover the Actual Item(s) Value Paid

Learn more about Worry-Free Purchase®

01 What does Worry-Free Purchase® cover?

·**Delay:** Domestic packages not delivered **10 days** after order fulfillment (i.e., the date when the order is shipped by the merchant) are considered delayed. (**30 days** for international packages.) Delayed packages will be compensated for **$5 USD**.

·**Loss:** Domestic packages not delivered **30 days** after order fulfillment (i.e., the date when the order is shipped by the merchant) are considered lost. (**60 days** for international packages.) Lost packages will be compensated for **the actual item(s) value paid**.

·**Damage:** Worry-Free Purchase® covers item damages to the point that the item(s) are unusable, clearly fractured, shattered, bent (if not bendable), crushed, etc., but does not cover cosmetic damage (scratches, dents, etc.), manufacturing damages, packaging errors, or unsealed items. Damaged item(s) will be compensated up to **the actual item(s) value paid**.

·Worry-Free Purchase® also covers **carbon-neutral shipment for all domestic shipments**.

·Note: Total compensation for one cover is up to the item(s) value actually paid.

**Seel FAQ Webpage For "Shipping Protection"**



Loss

Cover the Actual Item(s) Value Paid

Damage

Cover the Actual Item(s) Value Paid

Theft

Cover the Actual Item(s) Value Paid

Learn more about Shipping Protection

01 What does Shipping Protection cover?

Seel Shipping Protection covers package loss, damage, and theft that meet the following criteria.

**Loss**: Domestic packages not delivered before the 30th day following order fulfillment (i.e., the date when the order is shipped by the merchant) or international packages not delivered before the 60th day following order fulfillment are considered lost. The compensation for lost packages is the value paid for the purchased item(s).

**Theft**: Packages marked "delivered" yet not received are considered a "theft", though this may be due to some mishaps that are not criminal in nature. To qualify as a case of theft, supporting documents, such as a police report, may be required. (See "What Supporting Docs are Required for a Claim of Theft?") The compensation for a verified case of theft is the value paid for the purchased item(s).

**Damage**: Shipping Protection covers item damages to the point that the item(s) are unusable, clearly fractured, shattered, bent (if not bendable), crushed, etc., but does not cover cosmetic damage (scratches, dents, etc.), manufacturing damages, packaging errors, or unsealed items. The compensation for damaged items is up to the value paid for the purchased item(s).

Note: Total compensation for one Shipping Protection coverage is up to the value actually paid for the item(s).



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

18. Seel further states that for retailers who join Seel's Worry-Free Purchase™ program, Seel will handle all customer support relating to its shipping insurance, including reviewing requests from consumers, processing payments, and handling logistics. Seel represents that customer can add its Worry-Free Purchase™ during checkout and Seel will cover packages that are "Damaged on arrival" or "Lost during shipping." Seel further promises that it can review requests "in as little as a day" and handle refunds instantaneously. See the following screenshots taken from Seel's Worry-Free Purchase™ webpage.

**Seel Website – Worry-Free Purchase™**











HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

19. As of October 2024, Seel is partnered with "more than 2,000 global e-commerce businesses." *See* "GoodwillFinds Expands Partnership With Seel to Offer an Integrated Worry-Free Shopping Experience," Seel, at https://www.seel.com/news/goodwillfinds.

20. Seel's partner retailers act as Seel's agents, where Seel provides its shipping insurance through those retailers' websites. After consumers purchase Seel's shipping insurance, the retailers then submit the insurance premiums to Seel.

21. When a consumer checks out on a partner retailer's website, Seel's shipping insurance typically appears alongside the consumer's order as an additional product.

22. Seel represents that consumers can "[g]et a full refund if the order doesn't arrive as described, including loss & damage in transit." Seel provides this language to its partner retailers and its representations are uniform across all of its partner retailers' websites.

23. By clicking on the question mark next to Seel's "Worry-Free Delivery" during checkout, consumers can see an additional information popup about Seel's shipping insurance. Seel there states that its coverage includes packages that are "Lost in transit," "damaged/non-functional upon arrival," or "stolen or missing after delivery." This additional information popup is designed, written, and provided by Seel to all of its partner retailers and is also uniform across all of Seel's partner retailers' websites.

24. In the final step of the transaction, Seel sends consumers an email which confirms the consumer's purchase of Seel's shipping insurance and provides the details of the protection plan. Although the email includes details of the consumer's order from the partner retailer's website, the confirmation email is sent by Seel, not the retailer (specifically, it is sent from the email address support@seel.com).

25. In this confirmation email, Seel lists the covered items, states the covered monetary value, and gives instructions on how to report an issue with the order. Seel also reiterates that its coverage extends to packages that are "damaged in transit," "Lost in-transit," or "stolen or missing after delivery." See the screenshots below showing the confirmation email received by Plaintiff Malika Mickey, which is typical and representative of the shipping insurance confirmation emails sent by Seel to its consumer customers.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## Seel Confirmation Email For Worry-Free Delivery Purchase

**Enjoy peace of mind with your Worry-Free Delivery protection for order HBB03820446**
1 message

**Seel** <support@seel.com> Tue, Sep 9, 2025 at 1:44 PM
To: [redacted]

**Don't need protection?**

**Click here within 24 hours** of your purchase to cancel your Worry-Free Delivery protection, no questions asked.

⚠ Important: This action cannot be undone. Once canceled, your order will no longer be protected.

seel | STYLEWE

**Hi Malika,**

Thank you for adding Worry-Free Delivery powered by Seel to your order **HBB03820446** with Stylewe. Below are the details of your protection plan:

**Worry-Free Delivery Details**

| ORDER NUMBER | PROTECTION ID | PROTECTION COST |
|---|---|---|
| HBB03820446 | 2025090923300066387947004 | Protection Fee: $3.52 USD<br>Tax : $0.19 USD |

**Coverage**


Elegant Color Block Split Sleeves Stand Collar Midi Dress
~~$89.00 USD~~ $75.66 USD × 1 — $75.66 USD
Seel covers Fulfillment Risk


Urban Printing Striped Bodycon Skirt
~~$35.00 USD~~ $24.64 USD × 1 — $24.64 USD
Seel covers Fulfillment Risk

| | |
|---|---|
| Item(s) subtotal | $100.30 USD |
| Tax | $0.00 USD |
| Shipping fee | $16.99 USD |
| **Covered value** | **$117.29 USD** |

**Your Order is Protected Against**

- ☑ Shipment significantly delayed
- ☑ Item damaged in transit
- ☑ Lost in-transit
- ☑ Package stolen or missing after delivery


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## How to Use Your Protection

If you experience any issues with your order, simply click the button below:

Report an Issue

## Guideline for Reporting Seel-Covered Issues

### Important Things to Know

- Valid tracking information from **Stylewe** is required
- If you don't have tracking info, contact **Stylewe** first
- Check if your issue falls under Seel coverage (see below)

### What Seel Does NOT Cover

- Order never sent/shipped
- Incorrect item(s) sent including wrong item, wrong color/style, wrong size or imitation products
- Address issues resulting in misdelivery

*For the above issues, please contact the merchant you purchased from directly.*

### Delayed in Receiving

- If your package is delayed in delivery, not arriving within **10** days after shipping (**30** days for international orders), you can report it as delayed and received a payout if qualified.

### Lost Packages Not Delivered

- If your package hasn't arrived after **10** days (**30** days for international orders), you can report it as lost starting at day **11** through day **90** when your coverage window will expire.

### Stolen or Missing Packages While Tracking Shows Delivered

- Report within **7** days of tracking showing "delivered" if you never received it.

### Damaged During Shipping

- Report within **7** days of delivery.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

26. Although Seel sometimes refers to its shipping insurance as "shipping protection," "worry-free delivery," "worry-free purchase," or other similar terms, Seel's product for the purposes of this Complaint will be referred to as "shipping insurance" except when directly citing representations by Seel. All mentions of "shipping protection," "worry-free delivery," "worry-free purchase," or other similar terms are synonymous with "shipping insurance."

## V. SEEL'S SHIPPING INSURANCE IS "INSURANCE" AS DEFINED UNDER THE CALIFORNIA INSURANCE CODE

27. Under the California Insurance Code, "insurance" refers to "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Cal. Ins. Code § 22.

28. Additionally, "marine insurance" refers to "insurance against any and all kinds of loss of or damage to" goods or merchandise "in connection with any and all risks or perils of navigation, transit, or transportation." Cal. Ins. Code § 103(a).

29. By Seel's own description, its shipping insurance purports to cover the cost of packages that are lost, damaged, or stolen during the course of shipment.

30. Furthermore, Seel refers to its products as "insurance policies" on its website.

31. Notably, an article posted on Seel's own website refers to Seel as an "insurance company." *See* "Exclusive: Seel Raises $17M Series A to Unlock "High-Frequency, Low-Premium" Insurance with AI," Seel, https://www.seel.com/news/seel-raises-17m-series-a (referring to Seel as "an AI-powered insurance company focused on the North American market").

32. Seel's business model is to offer its shipping insurance product on the websites of its partner retailers, who act as contracted agents through whose websites Seel provides its shipping insurance to consumers. As Seel explains on its website, Seel automatically bills its merchants on a daily basis for the previous day's transactions. *See* "What's the billing & invoicing cycle with Seel?", Seel, at https://kover2618.zendesk.com/hc/en-us/articles/17540558313883-What-s-the-billing-invoicing-cycle-with-Seel.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

33. The language which Seel has all of its partner retailers display during the checkout process likewise demonstrates that Seel's shipping insurance is marine insurance under the California Insurance Code. Seel states that its shipping insurance is meant to cover packages that are "Lost in transit," "damaged/non-functional upon arrival," or "stolen or missing after delivery." Seel also represents that consumers can "[g]et a full refund if the order doesn't arrive as described, including loss & damage in transit."

34. Seel makes these same representations in the confirmation email it sends to its consumer customers immediately after they purchase Seel shipping insurance on partner retailer websites. Seel's confirmation email states that the package is covered in case it is "damaged in transit," "Lost in-transit," or "stolen or missing after delivery."

35. Seel's process for customers to submit a "claim" also closely resembles that of a legitimate insurance company. When an issue occurs with their shipment, customers can file a claim via the Seel Claim Portal, which they gain access to after purchasing Seel's shipping insurance. Seel will then assess the claim to determine if it qualifies for a payout. If it does, Seel will issue a refund through a prepaid credit card via email. If the claim does not qualify, Seel will send an email notifying customers of the denial and explaining the reason. *See* "Learn more about Worry-Free Purchase®," Seel, at https://www.seel.com/faq/learn-more-about-seel-worry-free-purchase.

36. Based on counsel's investigation, Seel has complete and unfettered control over setting the insurance rates it charges to consumers. Contrary to the law, Seel does not provide information about or seek or receive approval of the rates for its shipping insurance from any state insurance departments—neither in its home state of California nor in any other state.

37. Notably, Seel's policy summary for its shipping insurance warns consumers against making false insurance claims, even going so far as to cite the insurance fraud statutes for each state, furthering the impression that the insurance provided by Seel is legitimate. *See* "POLICY SUMMARY: Worry-Free Purchase Association," Seel, https://www.seel.com/terms/insurance.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

38. Although the shipping insurance is purchased on partner retailer websites, these retailers pass the insurance premiums they collect to Seel on a daily basis, and Seel remains fully involved throughout the transaction. For instance, when a customer places an order which includes Seel's shipping insurance, the customer will receive an email directly from Seel with their "Worry-Free Purchase® cover details, as well as instructions on how to report an issue." *See* "Learn more about Worry-Free Purchase®," Seel, at https://www.seel.com/faq/learn-more-about-seel-worry-free-purchase.

39. If a customer chooses to return a damaged item covered by Seel's shipping insurance in exchange for a refund, the customer will return the item to Seel and receive the payout from Seel, not from the partner retailer.

40. Seel's shipping insurance is "insurance" under the California Insurance Code because it functions as insurance and is "a contract whereby [Seel] undertakes to indemnify [consumers who purchase Seel's shipping insurance] against loss, damage, or liability arising from [issues that occur during shipment]." Cal. Ins. Code § 22.

41. Specifically, Seel's shipping insurance is "marine insurance" as it is "insurance against any and all kinds of loss of or damage to" packages that consumers order from Seel's partnered retailers "in connection with any and all risks or perils of [transit or delivery]." Cal. Ins. Code § 103(a).

## VI. <u>SEEL'S UNLAWFUL SHIPPING INSURANCE SCHEME HARMS CONSUMERS AND VIOLATES CALIFORNIA LAW</u>

42. Under the California Insurance Code, insurers "shall not transact any class of insurance business in this state without first being admitted for that class." Cal. Ins. Code § 700(a).

43. A "nonadmitted insurer" is "an insurer not licensed or admitted to engage in the business of insurance in this state in conformity with Section 700." Cal. Ins. Code § 1760.1(n).

44. Seel is not an admitted insurer to provide marine insurance in the state of California and thus cannot legally provide its shipping insurance, a marine insurance product, to consumers anywhere in the United States.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

45. Seel's insurance product, "Worry-Free Purchase," is a service provided by the Worry-Free Purchase Association, which purports to—but does not actually—extend the protections of this product to consumers through an insurance policy secured through Seel Insurance Services, Inc.

46. In the policy summary for its "Worry-Free Purchase" product, Seel states that the policy was written "for the account of Worry-Free Purchase Association, produced by Seel Insurance Services, [I]nc[.] and underwritten by Seel Insurance, Inc." *See* "POLICY SUMMARY: Worry-Free Purchase Association," Seel, at https://www.seel.com/terms/insurance. This is the only insurance policy ever referenced by Seel.

47. Based on counsel's investigation, Seel has simply provided self-insurance to itself. Seel Insurance, Inc. is merely a wholly owned subsidiary of Seel and is a captive insurance company that only provides insurance to Seel, <u>not</u> to consumers. Neither Seel nor any of its wholly owned subsidiaries are licensed or admitted insurance companies with a licensed insurance product that can be provided to consumers.

48. Therefore, contrary to Seel's representations, what Seel consumer customers receive is an insurance policy of Seel's own invention that is unauthorized and is completely separate from the policy that Seel has secured for itself.

49. In reality, Seel is a nonadmitted insurer providing unlawful and unauthorized insurance in violation of the California Insurance Code. *See* Cal. Ins. Code § 1760.1(n); Cal. Ins. Code § 700(a)

50. Despite this, Seel continues to represent to consumers that its shipping insurance is an authorized insurance product that provides protection for lost, damaged, and stolen packages.

51. Reasonable consumers would not know that Seel is an unadmitted and unauthorized insurer, nor would they have any reason to suspect that Seel is an unadmitted and unauthorized insurer. Reasonable consumers would not know that Seel's actions are illegal and



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

in violation of the California Insurance Code. Instead, any reasonable consumer would believe that they are receiving legitimate, legal insurance from an admitted insurer.

52. As a direct and proximate result of Seel's unauthorized provision of shipping insurance as an unadmitted insurer, Plaintiff and Class members were harmed and lost money or property.

53. The unlawful shipping insurance purchased by Plaintiff and Class members was not worth the price they paid. If Plaintiff and Class members had been aware that Seel's shipping insurance was unlawful, they would not have purchased it at all.

54. Plaintiff and Class members believed that Seel provided its shipping insurance as an admitted insurer, and that the shipping insurance thus had all the benefits and protections of legitimate insurance products provided by admitted insurers.

55. By law, legitimate, insurance companies are required to be members of the guaranty association in the states where they are licensed to do business. See "Guaranty Associations," ACLI, https://www.acli.com/about-the-industry/guaranty-associations. Like most other states in the United States, California has two types of guaranty associations: one for life and health insurance and one for property and casualty insurance. *Id*.

56. Specifically, California has the California Insurance Guarantee Association[3] for property and casualty insurance and the California Life & Health Insurance Guarantee Association[4] for life and health insurance.

57. These guaranty associations are funded by the licensed insurance companies, who are all required to pay a certain percentage, typically two percent, of their net direct written premium to the association. *See* "Supporting a System of Policyholder Protection," National Conference of Insurance Guaranty Funds, https://www.ncigf.org.

58. When an insurance company becomes insolvent, all unresolved policyholder claims are transferred to the state guaranty fund for assessment. *Id.* These claims are then paid out to policyholders from the company's remaining assets and the state guarantee fund. *Id.*

---

[3] See https://www.ciga.org.

[4] See https://www.califega.org.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

59. Insurance companies must pay into the guaranty fund for every state in which they are licensed. *See* "State Guaranty Fund: What it is, How it Works," Investopedia, https://www.investopedia.com/terms/s/stateguarantyfund.asp.

60. Unlicensed insurance companies do not pay into the fund, and as such, there is no way for policyholders to recover unpaid claims from such companies. *Id.*

61. If a consumer purchases insurance from an unlicensed insurer, the consumer will have fewer or even no protections if that insurer becomes insolvent. Therefore, a consumer is faced with substantially higher risks if they purchase from an unlicensed insurer rather than a licensed one—especially when that unlicensed insurer is a startup company funded by venture capital like Seel.

62. California law prohibits unadmitted insurers such as Seel from transacting in the insurance business.

63. Violations of the California Insurance Code affect important public policies in California. *See People v. United Nat. Life Ins. Co.*, 427 P.2d 199, 210 (1967) ("It is settled that 'the business of insurance is affected with a public interest.'") (internal citations omitted).

64. California's Unfair Competition Law ("UCL") broadly bans all unlawful, unfair, and deceptive business practices. Cal. Bus. & Prof. Code § 17200.

65. A UCL claim may be predicated on "[v]irtually any law" under the UCL's "unlawful" prong. *State Farm Fire & Cas. Co. v. Superior Ct.*, 45 Cal. App. 4th 1093, 1102 (1996). This is true "even if the underlying statute rendering the conduct unlawful does not itself create an independent right of action." *People v. Adir Int'l, LLC*, 114 Cal. App. 5th 275, 289 (2025).

66. Seel violates the California Insurance Code by transacting shipping insurance (a form of marine insurance) "business in this state without first being admitted for that class." Cal. Ins. Code § 700(a).

67. Seel's actions additionally violate the "unfair" prong of the UCL.

68. As described above, the purpose of California's guaranty associations is to protect the insured in the event that an insurance company becomes insolvent by ensuring that



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

the insured can still receive the payouts for their claims. Insurance companies that are licensed in California are backed by one of California's guaranty associations and are regulated under the California Insurance Code.

69. By contrast, an unadmitted insurer such as Seel is not "subject to contributions [to state guaranty associations], nor would [it] be readily susceptible to other California regulatory controls which promote fiscal responsibility." *Nowlon v. Koram Ins. Ctr., Inc.*, 1 Cal. App. 4th 1437, 1445 (1991).

70. Unlike a legitimate, admitted insurance company, Seel is a startup company that only survives as a result of funds given by investors. There will be little to no protections for Plaintiff and Class members who purchased Seel's shipping insurance if Seel goes insolvent, and as such Plaintiff and Class members are faced with much higher risks than consumers who purchased insurance from admitted insurance companies offering legitimate insurance.

71. Plaintiff and Class members did not know that Seel was not an admitted insurance company when they purchased Seel's shipping insurance. Seel took advantage of this lack of knowledge and as a result, Plaintiff and Class members—believing that the shipping insurance they purchased had all the same benefits and protections as insurance sold by an admitted insurer—paid more for Seel's unlawful shipping insurance than it was worth.

72. It was unfair for Plaintiff and Class members to pay the prices they paid for Seel's shipping insurance because Seel is an unadmitted insurer and its shipping insurance is not worth the prices they paid.

73. Seel should not be able to make money and profit from its unlawful insurance product where Seel knowingly did not seek proper admittance under the California Insurance Code and behaved in ways it knew violated the California Insurance Code.

74. As a direct and proximate result of Seel's acts and omissions, all consumers who purchased Seel's shipping insurance have been harmed and have lost money or property.

75. Seel continues to provide shipping insurance as an unadmitted insurer to this day. There is no reason to believe that Seel will voluntarily and permanently cease its unlawful



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

practices. Moreover, in the unlikely event that Seel was to cease its unlawful practices, Seel can and is likely to recommence these unlawful practices.

76. In acting toward consumers and the general public in the manner alleged herein, Seel acted with and was guilty of malice and oppression and acted in a manner with a strong and negative impact upon Plaintiff, the Class, and the public.

## VII. PLAINTIFF MALIKA MICKEY'S PURCHASE OF SEEL'S SHIPPING INSURANCE

77. Plaintiff Malika Mickey is, and at all relevant times has been a citizen and resident of the city of Midlothian, in Chesterfield County, Virginia.

78. Ms. Mickey is a victim of Seel's unauthorized shipping insurance scheme.

79. Ms. Mickey made multiple purchases of Seel's shipping insurance on multiple retailer websites.

80. For example, on September 9, 2025, Ms. Mickey visited the StyleWe website, www.StyleWe.com, to shop for clothing. After adding her desired items to her shopping cart, Ms. Mickey then proceeded through the checkout process.

81. On the checkout page, Seel's "Worry-Free Delivery" option appeared alongside the rest of Ms. Mickey's order in the manner described above at ¶¶ 21–23. Ms. Mickey proceeded through the checkout process and completed her order, including for Seel shipping insurance. Ms. Mickey was charged an additional $3.52 plus $0.19 in tax on her order for Seel's "Worry-Free Delivery" shipping insurance.

82. After completing her order, Ms. Mickey received an email from Seel confirming her order and her purchase of Seel's shipping insurance. As shown above at ¶ 25, the email was sent by Seel and gave Ms. Mickey instructions on how to report an issue with her order. In the email, Seel represented that the shipping insurance would cover packages that are "damaged in transit," "Lost in-transit," or "stolen or missing after delivery."

83. When Ms. Mickey made her purchase, she had no suspicion that Seel was not admitted by the California Department of Insurance (nor by any other state department of


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

insurance) to provide shipping insurance. Ms. Mickey did not know that Seel was offering an unlicensed and illegal insurance product.

84. Ms. Mickey would not have purchased Seel's shipping insurance had she known that Seel is an unadmitted insurer and that Seel was offering an unlicensed and illegal insurance product.

85. As a direct and proximate result of Seel's acts and omissions, Ms. Mickey was harmed, suffered an injury-in-fact, and lost money or property.

86. When Ms. Mickey shopped on StyleWe and bought Seel's shipping insurance, she had no suspicion that there was any deceptive or unlawful conduct affecting her purchase. StyleWe and Seel gave Ms. Mickey no reason to be suspicious. Ms. Mickey first learned of the illegal nature of Seel's shipping insurance in February 2026 when her attorneys told her about Seel's unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Ms. Mickey did not know or suspect that Seel was engaging in an unauthorized and illegal shipping insurance scheme or that she had been a victim of the scheme.

87. Ms. Mickey has a legal right to now bring an action against Seel to recover any and all of the money she paid for Seel's shipping insurance.

88. The deceptive practices alleged herein, and experienced directly by Ms. Mickey, are not limited to occurring on a single online retail website. Rather, Seel's unauthorized and illegal shipping insurance scheme continues to be systematic and pervasive across the thousands of retailer websites where Seel's shipping insurance is offered.

## CLASS ALLEGATIONS

89. Plaintiff brings this class action on behalf of herself and the following class (the "Class"):

> **All consumers nationwide who, within the applicable limitations period purchased Seel's "Worry-Free Delivery" or other shipping insurance products.**

90. Specifically excluded from the Class are Seel and any entities in which Seel has a controlling interest, Seel's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

91. **Application of the Discovery Rule.** This Court should apply the discovery rule to extend any applicable limitations period and corresponding class period to August 1, 2021, which is the date on which Seel first engaged in its unlawful shipping insurance scheme.

92. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007). Plaintiff and the members of the Class did not know, and could not have reasonably known, about Seel's unlawful conduct.

93. When Ms. Mickey bought Seel's shipping insurance while shopping on the StyleWe website, she had no suspicion that Seel was an unadmitted insurer under California law or that the shipping insurance product provided by Seel was an unlicensed and unlawful insurance product. Plaintiff did not know and did not have reason to know that Seel's actions violated the California Insurance Code. Seel gave Plaintiff no reason to be suspicious. Plaintiff first learned of the illegal nature of Seel's shipping insurance in February 2026 when her attorneys told her about Seel's unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Plaintiff did not know or suspect that Seel was offering unauthorized and illegal shipping insurance or that she had been a victim of the scheme.

94. Likewise, class members would not have known or suspected that Seel was engaging in this deceptive shipping insurance scheme. Reasonable consumers presume that companies like Seel are not engaging in unlawful conduct. Reasonable consumers would believe that Seel's representations about its insurance products were true. Reasonable consumers would believe that the shipping insurance they received was a legitimate insurance contract from an authorized insurer that complied with the California Insurance Code.

95. Moreover, Plaintiff and the Class could not have, with the exercise of reasonable diligence, discovered Seel's shipping insurance scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover. Further, Seel made affirmative misrepresentations on its website that its shipping insurance was legitimate, giving Plaintiff and Class members even less ability to learn, or reason to suspect, that Seel was violating the California Insurance Code.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

96. Plaintiff's counsel only found evidence for Seel's deceptive scheme by conducting an extensive investigation that no reasonable person would conduct.

97. **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises thousands of individuals. The exact number and identities of Class members are contained in Seel's records and can be easily ascertained from those records.

98. **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating classwide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a. Whether the alleged conduct of Seel violates the California Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*;

b. Whether Plaintiff and the Class have suffered injury and have lost money or property as a result of Seel's unlawful conduct;

c. Whether Seel should be ordered to pay back any and all money obtained from Plaintiff and the Class for its unlawful shipping insurance; and

d. Whether Seel should be enjoined from engaging in the unlawful conduct alleged herein.

99. **Typicality.** Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a direct result of Seel's standard practices and schemes, bring the same claims, and face the same potential defenses.

100. **Adequacy.** Plaintiff and her counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of Class members. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

101. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Seel's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

102. By its conduct and omissions alleged herein, Seel has acted and refused to act on grounds that apply generally to Class members, such that declaratory relief is appropriate respecting the Class as a whole.

103. Seel is primarily engaged in the business of providing insurance. Each cause of action brought by Plaintiff against Seel in this Complaint arises from and is limited to statements or conduct by Seel that consist of representations of fact about Seel's business operations or insurance products that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Seel's insurance products. Each cause of action brought by Plaintiff against Seel in this Complaint arises from and is limited to statements or conduct by Seel for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## CAUSES OF ACTION

### COUNT I
**Violation of the California's Unfair Competition Law ("UCL")**
**California Business & Professions Code § 17200 *et seq*.**

104. Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

105. Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

106. California Business & Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law ("UCL"), prohibits any unfair or unlawful business practice.

107. **"Unlawful" Prong.** Seel has violated the UCL by transacting shipping insurance, a form of marine insurance, "business in [California] without first being admitted for that class," in violation of California Insurance Code § 700(a).

108. **"Unfair" Prong.** Seel has violated the UCL by providing shipping insurance as an unadmitted insurer that is not a member of or contributor to either of California's guaranty associations.

109. With respect to omissions, Seel at all relevant times had a duty to disclose the information in question because, inter alia, Seel had exclusive knowledge of material information that was not known to Plaintiff and Class members.

110. As a direct and proximate result of Seel's violations of the UCL, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

111. Seel is not an admitted insurer in the state of California, as is required under the California Insurance Code. The unlawful shipping insurance purchased by Plaintiff and Class members was not worth what they paid. If Plaintiff and Class members had been aware that Seel's shipping insurance was unlawful, they wouldn't have purchased it at all.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

112. By its conduct and omissions alleged herein, Seel received more money from Plaintiff and Class members than it should have received. Seel should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

113. Seel's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members. Perpetrating a years-long scheme of providing unlawful shipping insurance is immoral, unethical, and unscrupulous. Moreover, Seel's conduct is oppressive and substantially injurious to consumers. There is no utility to Seel's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Seel's conduct alleged herein.

114. Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

115. **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seek public injunctive relief under the UCL to protect the general public from Seel's unlawful shipping insurance scheme.

116. Violations of the California Insurance Code affect important public policies in California. *See People v. United Nat. Life Ins. Co.*, 427 P.2d 199, 210 (1967) ("It is settled that 'the business of insurance is affected with a public interest.'") (internal citations omitted).

117. Seel's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Seel absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Seel from committing the unlawful practices alleged herein.

118. The balance of the equities favors the entry of permanent public injunctive relief against Seel. Plaintiff, the members of the Class, honest and lawful competing businesses, and the general public will be irreparably harmed from Seel's unlawful shipping insurance scheme absent the entry of permanent public injunctive relief against Seel.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

119. Plaintiff lacks an adequate remedy at law to prevent Seel from engaging in the unlawful practices alleged herein.

120. Monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages will not prevent Seel from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by Seel.

## PRAYER FOR RELIEF

Plaintiff Malika Mickey, on behalf of herself and the proposed class, requests that the Court order relief and enter judgement against Defendant Seel, Inc. as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and her counsel to represent the Class;

2. Order that the discovery rule applies to extend any applicable limitations period and the corresponding class period back to August 1, 2021 (the date Seel first engaged in the unlawful conduct alleged herein);

3. Declare that Seel is providing insurance in violation Cal. Ins. Code § 700(a);

4. Declare that Seel's conduct alleged herein violates the UCL;

5. Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Seel obtained, directly or indirectly, from Plaintiff and Class members as a result of the unlawful conduct alleged herein;

6. Permanently enjoin Seel from engaging in the unlawful conduct alleged herein;

7. Retain jurisdiction to monitor Seel's compliance with the permanent public injunctive relief requested;


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

8. Order Seel to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

9. Grant such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Date: February 12, 2026.

Presented by:

HATTIS LUKACS & CORRINGTON

By: ______________________

Daniel M. Hattis (SBN 232141)
Email: dan@hattislaw.com
Paul Karl Lukacs (SBN 197007)
Email: pkl@hattislaw.com
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

*Attorneys for Plaintiff*
*and the Proposed Class*